UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROME I. KATZ,<br><br>Claimant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:17–04821 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Claimant Jerome I. Katz ("Claimant") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB"). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

#### A. FACTUAL BACKGROUND

Claimant is a sixty-eight-year-old male who was employed by Monmouth County Board of Social Services as a social worker from 1972 to 1982. R. at 519–20.[1] Though not his original assignment, at some point Claimant was reassigned to work primarily on cases involving child abuse. R. at 368. This reassignment caused Claimant anxiety, paranoia, and stress, and he had significant difficulties interacting with his coworkers. R. at 365–67. At the same time, Claimant also began to endure many personal challenges, including the loss of his home and breakdown of his marriage. R. at 364, 370–73. In 1982, Claimant took leave from his job as a social worker due to orthopedic injuries he sustained while on the job.

Claimant eventually applied for a New Jersey state disability pension based on headaches and mood disorders, including depression and anxiety. R. at 361. Claimant underwent two psychological evaluations to determine his eligibility for the state pension. In a report dated March 3, 1986, Dr. Edward Dengrove, who first evaluated Claimant in 1984, concluded that Claimant suffered from "depressive reaction with features of anxiety to such a degree that it incapacitates him for social work" such that he was "totally and

---

[1] Citations to "R." refer to the Administrative Record, ECF Nos. [4]–[4–12].

1

permanently disabled to engage in this occupation." *Id.* at 641. Dr. Dengrove recommended further psychiatric treatment. *Id.* at 641. Claimant discontinued seeing Dr. Dengrove after several visits. *Id.* at 754.

Claimant was subsequently evaluated by Dr. Gerald Ollins on May 20, 1986. Dr. Ollins similarly concluded that Claimant suffered from "major depression with anxiety features" and was "totally and permanently disabled to work for the Monmouth County Department of Social Services." *Id.* at 655–56. Dr. Ollins also recommended further psychiatric treatment. *Id.* at 656.

On June 7, 1986, Dr. David Eckstein, a physician for the state pension, determined that "Mr. Katz is suffering from a major depressive state with anxiety and paranoia. He cannot function as a social worker. The Medical Board considered him permanently and totally disabled." R. at 765. Based on the findings of Drs. Dengrove, Ollins, and Eckstein, Claimant was granted a state disability pension in 1986. R. at 361.

Claimant has not held any non-occasional employment since he began receiving his state disability pension. Based on this employment history, Claimant and the Commissioner agree that Claimant's date of last insured for purposes of his DIB claim is December 31, 1988.

### B. PROCEEDINGS BEFORE THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL

On April 12, 2012, Claimant applied for DIB based on his mental health disability under Section 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) of the Social Security Administration's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, 12.06. In his application, Claimant cites a number of mental impairments with an onset date of September 29, 1982. After denial of his claim, Claimant, represented by counsel, appeared for hearing before an administrative law judge ("ALJ") on September 29, 2015. R. at 248. On November 4, 2015, the ALJ issued a Notice of Decision denying Claimant's application for DIB, finding that Claimant was "not disabled" from his alleged onset date of September 29, 1982 to his date of last insured of December 31, 1988 ("Relevant Period"). R. at 245.

On January 7, 2016, Claimant appealed the ALJ's decision to the Appeals Council. R. at 206, 333. Subsequently, counsel for Claimant filed several additional documents with the Appeals Council to supplement and clarify the legal and factual basis for the appeal. *See, e.g.*, R. at 14–18, 31–48, 51–60, 66, 766–75. The Appeals Council found that these documents were not "new and material" and thus would not render the ALJ's "decision [] contrary to the weight of all evidence now in the record." R. at 1–2. The Appeals Counsel

2

added these filings to the administrative record and denied review of the ALJ's decision. R. at 1–5. Claimant then filed this appeal.[2]

### C. THE INSTANT APPEAL

Claimant challenges the ALJ's determination that he was "not disabled" during the Relevant Period. The arguments set forth by Claimant's counsel in a 90–page brief and 68–page reply generally challenge the ALJ's findings regarding Claimant's limitations based on her failure to properly weigh of the medical reports, testimony, and documentary evidence. *See* ECF Nos. [17], [17–1], and [25].[3] The Court construes these arguments as challenges to the ALJ's findings at Steps 3, 4, and 5 of the Commissioner's five-step sequential evaluation under 20 C.F.R. §§ 404.1520, 416.920(e)-(f), Part 404 Subpart P, Appendix 1. Claimant additionally argues that ALJ appeared "rushed" at the hearing and failed to fairly and fully develop the record. ECF No. [17-1] at 79–87.

In response, the Commissioner argues that Claimant did not meet the Administration's definition of "disabled" during the Relevant Period (ECF No. [22] at 16); that Claimant did not meet his burden to establish that he had marked limitations in daily activities, concentration, persistence or pace, or repeated episodes of decompensation (*id.* at 21–26); that the ALJ's findings regarding Claimant's residual functional capacity ("RFC") are supported by substantial evidence (*id.* at 27–36); and that the ALJ conducted a full and fair hearing without evidence of bias (*id.* at 36–39).

## II. STANDARD OF REVIEW

On a social security appeal from an ALJ's final decision, the district court conducts plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a

---

[2] On October 9, 2018, Claimant filed a request for oral argument. ECF No. [30]. Rule 9.1(f) provides that all Social Security cases will be resolved on the briefs "unless a request for oral argument is granted or as otherwise directed by the Court." L.R. 9.1(f). Here, the Court has carefully reviewed the written submissions of counsel and finds oral argument unnecessary since this case "does not present any extraordinary or unusual issues that would necessitate granting [Claimant's] request." *Perretta v. Colvin*, No. CIV.A. 14-2506 RBK, 2015 WL 1808509, at *1 n.2 (D.N.J. Apr. 21, 2015).

[3] Claimant makes similar arguments objecting to the Appeals Council's order denying review of the ALJ's decision. The Social Security Act provides that a claimant may appeal the Commissioner's "final decision" in federal court. 42 U.S.C. § 405(g). If the Appeals Council denies review of the ALJ's decision, as here, the ALJ's decision is the "final decision" for purposes of appeal. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). To the extent that Claimant argues error in the Appeals Council denial of review, these arguments are improperly directed at the non-final decision of the Appeals Council and the Court need not address them.

preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Thus, so long as there is substantial evidence to support the Commissioner's findings, district courts must affirm the decision, even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III. DISCUSSION

#### I. The Five-Step Sequential Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of [DIB] to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). In order to establish eligibility for DIB, a claimant has the burden of demonstrating that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) ; 20 C.F.R. § 416.905(a).

The Social Security Administration uses a five-step sequential evaluation to determine if a claimant is entitled to benefits: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether claimant has a severe impairment; (3) whether this impairment meets or equals a listed impairment; (4) whether the impairment prevents claimant from performing her past-relevant work; and (5) whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520, 416.920(e)-(f), Part 404 Subpart P, Appendix 1. Claimant bears the burden of proof for the first four steps, and the burden shifts to the Commissioner as to step five. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

#### II. The ALJ's Findings

Applying this five-step analysis, the ALJ made the following findings: (1) Claimant did not engage in substantial gainful activity during the Relevant Period; (2) through the date of last insured, Claimant had three severe impairments: major depressive disorder, anxiety disorder and obsessive compulsive disorder; (3) these impairments did not meet or equal the criteria of the Listing of Impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) through the date of last insured, Claimant was unable to perform his past relevant work, but Claimant retains RFC to engage in all exertional levels of work with the following limitations: he could not climb ropes, ladders or scaffolds; work at heights or with dangerous machinery; the job must be low stress routine work having no fast production pace or strict quotas; the work must not require more than occasional interaction with the public and occasional, superficial interactions with co-workers; (5) through the date of last insured, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could have performed. R. at 339–49. Based on these findings, the ALJ determined that

Claimant was not disabled under the Social Security Act from September 29, 1982 to December 31, 1988 and was therefore not entitled to DIB. R. at 349.

### III. Scope of the Record

Before reviewing ALJ's findings for substantial evidence, the Court first turns to the threshold issue of the scope of the record. Claimant argues that the Court should consider the additional documents he filed after the ALJ issued her decision to find that the ALJ's decision was not supported by substantial evidence. However, evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was erroneous. *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991). Instead, the district court may remand the case for reconsideration when faced with a request to consider new evidence in a social security appeal. 42 U.S.C. § 405(g). Such a remand is appropriate only when the new evidence is "material," and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*; *see also Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). A claimant shows good cause when there is some justification for his failure to timely produce the records. *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 834 (3d Cir. 1984) (citation omitted). This requirement prevents dissatisfied claimants from turning the remand procedure into "an informal, end–run method of appealing an adverse ruling by the [Commissioner]." *Id.*

Here, the Court need not examine whether the documents in question meet the newness or materiality prongs because Claimant has failed to show good cause. Two of the additional documents—a narrative letter from Claimant and a follow up report from Dr. Williamson—were authored after the hearing and ostensibly seek to rebut the ALJ's findings. As to these two documents, Claimant fails to even argue any good cause for his failure to supply this evidence prior to the hearing.

For the remaining documents, each was in Claimants possession during the pendency of the proceedings before the ALJ, but Claimant argues he could not find them due to hoarding and disorganization at his home. While the Court is cognizant that Claimant's alleged mental impairments may have made it more difficult to gather documents, the Court finds this is not sufficient to demonstrate good cause. Claimant's lack of due diligence cannot be used to avoid the ALJ's unfavorable ruling and induce a second bite at the apple. For lack of good cause shown, the Court finds remand improper.

### IV. Claimant's Challenges as to Step Three

Claimant argues that the ALJ erred in concluding that Claimant's impairments, while severe, did not meet the criteria of the listed impairments under Sections 12.04 or 12.06.[4] A "listed impairment" is one that appears on the Commissioner's Listing of

---

[4] Claimant argues that the Court should apply the Social Security Administration's revised medical criteria evaluating mental disorders effective after the ALJ's November 4, 2015 decision. *See, e.g.*, ECF No. [17] at 4, 32, 50–56. However, the implementing regulations from the Commissioner state: "We expect that federal courts will review our final decisions using the rules

Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley,* 493 U.S. 521, 525 (1990). If a claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. *Id.*

To satisfy the criteria for a Listed Impairments under 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), a claimant must demonstrate that he suffers from any two of the following: a marked restriction in activities of daily living; marked restriction in maintaining social functioning; marked restriction in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of an extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, 12.06. The ALJ found that Claimant had no restriction in activities of daily living, marked difficulties in social functioning, mild difficulties in concentration, persistence and pace, and no episodes of decompensation.

Claimant argues that the ALJ erred in finding he did not have "marked" restrictions in activities of daily living and concentration, persistence and pace. The Court reviews these findings for substantial evidence. *Sykes*, 228 F.3d at 262. At the outset, the Court notes that much of Claimant's argument relies on evidence which relates to Claimant's condition outside the Relevant Period. As to the evidence related to the Relevant Period, Claimant testified that through December 31, 1988 he had headaches up to five times a week, but did not seek any treatment for them and did not take any medication for them beyond aspirin and caffeine. R. at 374. He reported these headaches to both Drs. Dengrove and Ollins, but neither doctor made any findings or conclusions about their severity or their effects on Claimant's daily activities or concentration, persistence, or pace. *See* R. at 638–42; 655–56. Claimant further testified that he did not take any medications for any of his complained-of mental health issues during the Relevant Period and did not seek any treatment for them. *Id.* at 374–76. He testified that his anxiety and depression began in the 1980's, and that he had trouble completing tasks and began to procrastinate, which caused fights with his wife. R. at 382, 386–87. He denied that he needed to be reminded to eat, shower, or get out of bed, and testified that he would take care of his children when they were not in school and his wife was working. *Id.* at 385–86.

Medical reports from Drs. Dengrove and Ollins conclude that Claimant had some difficulties with procrastination, concentration, and staying on task, and preferred to stay

---

that were in effect at the time we issued the decisions." *See* Soc. Sec. Admin., Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138–1, 2016 WL 550752, at *1 n.1, (Sept. 26, 2016). Since the guidance from the Social Security Administration indicates that the Administration did not intend for the district court to apply the revised criteria retroactively in evaluating final agency decisions issued prior to January 17, 2017, the Court analyzes Claimant's appeal based on the medical criteria for evaluating mental disorders that were in effect at the time the ALJ issued her decision. *See, e.g.*, *Snyder v. Berryhill*, No. CV 17–725, 2018 WL 1911372, at *3 (W.D. Pa. Apr. 23, 2018).

inside in his home environment. *Id.* 640, 656. These records also reflect Drs. Dengrove's and Ollins' observations that Claimant was appropriately groomed, had good hygiene, and did not report any specific difficulties in completing activities of daily living. *Id.*

The record contains substantial evidence to support the ALJ's determination that Claimant did not have marked impairments as to activities of daily living and concentration, persistence and pace. *See Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 462 (D.N.J. 2016) (finding substantial evidence supported the ALJ's finding Paragraph B's criteria were not met); *Paules v. Colvin*, No. 3:12CV739, 2014 WL 70097, at *6 (M.D. Pa. Jan. 9, 2014) (same). Accordingly, the Court need not disturb the ALJ's findings as to Step Three.

## V. Claimant's Challenges as to Step Four

The ALJ next determined that Claimant retained the residual functional capacity to perform work at all exertional levels, with certain physical, stress, and social interaction limitations. R. at 343–47. In making this determination, the ALJ provided a detailed analysis of Claimant's testimony and the record evidence, including each of seven medical evaluations, and found that while the objective medical evidence supported Claimant's alleged symptoms during the Relevant Period, it did not support his testimony that his symptoms' intensity, persistence, and limiting effects were totally disabling. *Id.* at 345. The ALJ thus determined that Claimant retained an RFC to perform all exertional levels of work except that could not climb ropes, ladders or scaffolds; work at heights or with dangerous machinery; the job must be low stress routine work having no fast production pace or strict quotas; the work must not require more than occasional interaction with the public and occasional, superficial interactions with co-workers. R. at 343–47.

Claimant argues that the ALJ erred in this determination because Claimant has an "RFC of zero." Claimant testified that during the Relevant Period he became stressed by his job and his relationship with his co-workers and suffered from nightmares, headaches, and anxiety. R. at 366. Claimant also testified that during this time he assisted with the care of his children and sometimes procrastinated chores around the house. *See id.* at 386–87. He stated that he wanted to work and thought he could do so in a "non-structured" situation where he did not have such difficult relationships with his co-workers. *Id.* at 388–89. Claimant testified that he was stressed by making mistakes, took criticism poorly, and was forgetful and disorganized. *Id.* at 392–93.

Contemporaneous medical reports from Drs. Dengrove and Ollins note that Claimant's basic subtraction abilities were "fair" and he had a short attention span. *Id.* 640, 656. The records further indicate that Claimant was able to interpret proverbs and relate like objects, but had difficulty repeating five digits forwards and backwards. *Id.* Consistent with Claimant's testimony, Dr. Dengrove reported that Claimant was considering seeking other work outside of his role as a social worker. *Id.* at 639.

This record is sufficient to constitute substantial evidence as to Step Four. Accordingly, Court need not disturb ALJ's determination that Claimant, while requiring

certain limitations in physical, stress, and social interaction, retained some residual functional capacity. *See Sanchez v. Comm'r Soc. Sec.*, 705 F. App'x 95, 97 (3d Cir. 2017) (finding ALJ's RFC determination supported by substantial evidence).

### VI. Claimant's Challenges as to Step Five

The ALJ determined that, given his age, education, work experience, and RFC, Claimant could perform other work which existed in the national economy. R. at 346. This conclusion is also supported by substantial evidence. The Claimant's challenges to these findings can be divided into four separate arguments. The Court addresses each in turn.

First, Claimant argues that medical reports from the Relevant Period state that Claimant was disabled from all work. However, no physician during the Relevant Period opined that Claimant could not perform any work at all. Rather, each medical opinion based on examination of Claimant during the Relevant Period found that he was disabled from his current position as a social worker. R. at 359, 640. During his psychiatric evaluation with Dr. Dengrove, Claimant reported that he wanted to seek other employment outside of social work. R. at 639. And, at the hearing, Claimant testified that when he left his job as a social worker, he still felt that he could perform some work. R. at 388–89. The Court thus finds this argument unpersuasive.

Second, Claimant's counsel argues that the ALJ improperly discounted a 2015 medical report from treating physician Dr. Williamson. "An ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Jones v. Comm'r*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). However, an ALJ may give little weight to a treating physician's opinion if the "supporting explanations" provided in the report are lacking. *Id.* (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

The ALJ assigned "little weight" to Dr. Williamson's report. R. at 347. Dr. Williamson concluded in a June 4, 2015 report based on three office visits in 2015 that Claimant was totally disabled as to all work in during the Relevant Period. Dr. Williamson drew this conclusion not by examining Claimant during the Relevant Period but by relying on (1) Claimant's representations that he was disabled as to all work in 1988 and (2) Drs. Dengrove's and Ollins' conclusions that Claimant was disabled in 1986 as to his job as a social worker. R. at 638–42, 656. While Dr. Williamson's report may be probative of Claimant's 2015 impairments, the Court finds that the ALJ appropriately gave little weight to this report based on its lack of supporting explanations for the conclusion regarding Claimant's impairments in the 1980s. *See Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005) (finding the ALJ did not inappropriately reject the treating physician's opinion).

Third, Claimant argues that ALJ improperly relied on the vocational expert's responses to an incomplete hypothetical. The ALJ solicited testimony from the vocational expert as to whether a person of Claimant's age, education, and past work experience could perform work available in significant numbers in the national economy if the individual

8

had no exertional limitations; could not climb ropes, ladders or scaffolds; could not work at heights; could not operate dangerous machinery (defined as machines that cut or shear); must work in a low stress environment (defined as routine work having no fast production rate pace and no strict production quotas); must perform routine tasks (defined as being consistent with unskilled work); must have no more than occasional interaction with the public; and must have no more than superficial interaction with coworkers occasionally. R. at 396. The vocational expert testified that Plaintiff was capable of performing three representative jobs: mail clerk, sorter, or surveillance monitor. R. at 396–97.

As observed by the Third Circuit, "[t]he Commissioner can . . . rely on testimony from a [vocational expert] to meet its step-five evidentiary burden." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). "The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). The hypothetical question must accurately reflect all a claimant's credibly established impairments but need not include every physical or mental impairment alleged by the Claimant. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). When challenging the ALJ's reliance on a hypothetical, claimants generally disagree with the ALJ's framing of RFC findings to the vocational expert or disagree with the underlying RFC findings. *Rutherford*, 399 F.3d at 554.

Claimant mounts both challenges. ECF No. [17–1] at 68–74. However, to the extent that Claimant argues that the ALJ failed to properly determine his RFC, Claimant simply rehashes his arguments as to Step Four, and the Court has already found that the ALJ's RFC determination was based on substantial evidence. As to the challenge based on the framing of the question, Claimant argues that the ALJ failed to convey to the vocational expert Claimant's limitations because the ALJ did not define "low stress" to include a limitation for change in setting or decision-making during the workday. ECF No. [17-1] at 72 (citing *White v. Colvin*, No. CIV.A. 13–3991 MCA, 2015 WL 1523068, at *3 (D.N.J. Apr. 2, 2015)). However, the ALJ did not find, and the credible evidence does not support, that Claimant had setting or decision-making limitations in 1988. Thus, the ALJ was not required to instruct the vocational expert to consider these limitations. The Court finds no error with the hypothetical as posed, nor with the ALJ's reliance upon it. *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

Finally, Claimant argues that the ALJ and vocational expert improperly relied on the Dictionary of Occupational Titles which is outdated and does not reflect certain mental impairments. R. at 73–79. In support of this argument, Claimant cites to no case law and instead attaches to his brief a printout from the Social Security Administration's website that indicates that new guidance is anticipated sometime in 2019. ECF No. [17–16] at 1. Considering the routine reliance on the DOT guidance in this Circuit by vocational experts, *see e.g.*, *Zirnsak*, 777 F.3d at 607, and the lack of any authority in support of Claimant's argument, the Court finds this argument unpersuasive.

### VII. Failure to Provide a Full and Fair Hearing

Claimant argues that he did not receive a full and fair hearing because the ALJ was distracted or rushed. ECF No. [17] at 10. This argument, however, is contradicted by the transcript from the hearing. While during the hearing the ALJ stated that she had an appointment at 1:00 pm, both Claimant and the vocational expert testified upon questioning of the ALJ and his counsel, and Claimant's counsel raised no objection to the length of the hearing. R. at 400. After counsel for Claimant' stated there was no additional testimony he would like to solicit and no additional documents to add to the record, the ALJ adjourned the hearing at 12:14 p.m. *Id.* at 401. The Court accordingly finds this argument without merit.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

                                                */s/ William J. Martini*
                                           **WILLIAM J. MARTINI, U.S.D.J.**

Dated: November 27, 2018